IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs April 27, 2021 at Knoxville

**STATE OF TENNESSEE v. WILLIAM THOMAS KELLY**

**Appeal from the Circuit Court for Tipton County**
**No. 9430    Joseph H. Walker, Judge**

_____

**No. W2020-00733-CCA-R3-CD**
_____

The defendant, William Thomas Kelly, appeals his Tipton County Circuit Court Jury convictions of evading arrest, violating the open container law, violating the financial responsibility law, and driving on a revoked, cancelled, or suspended license, challenging the sufficiency of the convicting evidence. Discerning no reversible error, we affirm the judgments of the trial court. Because we discern possible clerical error in the judgment form for Count 2, we remand the case for the entry of any appropriate corrected judgment form for that count.

**Tenn. R. App. P. 3; Judgments of the Circuit Court Affirmed; Remanded**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which TIMOTHY L. EASTER, and J. ROSS DYER, JJ., joined.

David S. Stockton, Assistant District Public Defender, for the appellant, William Thomas Kelly.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Mark Davidson, District Attorney General; and Jason Poyner, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Tipton County Grand Jury charged the defendant with one count of felony evading arrest; one count of reckless driving; one count of driving while his privilege to drive was cancelled, suspended, or revoked; one count of violating the financial responsibility law, and one count of violating the open container law for events that occurred on August 12, 2017.

At the defendant's November 6, 2019 trial, Constable James Stroud testified that he was patrolling in District 6 of Tipton County in the early morning hours of August 12, 2017, when he "observed a white Lincoln Town Car traveling southbound on Quito-Drummonds Road." When Constable Stroud "ran the tags through dispatch," he learned that the license tag affixed to the Town Car actually belonged to a Nissan Frontier registered to a Dora Kelly in Millington. Constable Stroud then "attempted to stop the vehicle on Quito-Drummonds Road near Simmons where the vehicle attempted to flee from me." Constable Stroud testified that "[a]s soon as I initiated my emergency equipment, the vehicle did speed up at a high rate." He pursued the vehicle, which reached speeds of "probably 60 miles per hour," well in excess of the posted speed limit on the curvy road.

As they drove, a deputy sheriff passed them in the oncoming direction and then turned around to join the pursuit. Constable Stroud said that the driver briefly lost control of the vehicle, "driving into a field" before regaining control and "continuing southbound." The driver, who was the vehicle's only occupant and whom Constable Stroud described as "a white male," "turned onto Ray Bluff and then immediately onto Crigger [R]oad," all the while "traveling in both lanes back and forth." The vehicle "traveled into Shelby County," failing to stop at two different intersections, before finally turning "onto West Union where the driver appeared to intentionally turn south, running through a ditch into a cornfield to attempt to elude."

Constable Stroud testified that deputies attempted to "contain the subject into that cornfield" but did not drive into the field "due to the height of the corn," saying, "Wasn't sure of who or where the subject would have been. How far into the corn he was." As a result, officers were unable to immediately enter the vehicle "[d]ue to the hazard of the corn." When the officers finally entered the vehicle, which had traveled "two to three hundred yards" into the cornfield, the driver was gone. Officers found a hat, which Constable Stroud identified as the one he had seen being worn by the driver of the Town Car, lying on the ground just outside the vehicle. Inside the vehicle, officers discovered a cellular telephone and two open, empty bottles of Budweiser beer. The ashtray contained a number of cigarette butts. In addition, "[t]here was at least one cigarette that was recently smoked l[]ying next to the hat on the ground outside of the car." When officers opened the cellular telephone, "[i]t did show a picture of" the defendant. Further examination of the telephone uncovered more pictures of the defendant as well as a Facebook account bearing the defendant's name. The Facebook page featured a picture of the defendant wearing the same hat found lying outside the car.

Constable Stroud asked officers with the Millington Police Department to go to the residence associated with the license tag on the car, which residence was five or six miles from the cornfield where the Town Car was abandoned. The officers who went to

the residence encountered the defendant's mother, Dora Kelly. Constable Stroud said that he and Tipton County Sheriff's Department Deputy Jarred Holloway asked Ms. Kelly for consent to search the residence. While at the residence, Constable Stroud identified the defendant as the man he believed to be the driver of the vehicle. He maintained that he was able to identify the man because "[d]uring the pursuit, the driver of the vehicle turned several times looking back at myself, which g[a]ve me a visible appearance of his face." The man was wearing a shirt that was a different color than the one worn by the driver of the vehicle, but officers found the "clothing that [the driver] was wearing at the time" in "a laundry basket in the laundry room." A pair of shoes found inside the residence were "covered in wet grass of what appears to be corn stalk." A pair of denim shorts in the basket were "covered in dirt," and a sock from the basket had "corn leaves on it." All of the clothing was damp.

Constable Stroud testified that the defendant claimed that he had not been driving the Town Car and that, indeed, the car had been stolen from him. The defendant told Constable Stroud "that he had hitchhiked home somehow or walked part of the way home." Constable Stroud said that he checked the defendant's driving history and learned that his license had been revoked. A certified copy of the defendant's driving record from the Tennessee Department of Safety was exhibited to Constable Stroud's testimony. Officers found no proof of insurance in the car, and the registration information available did not indicate that the defendant had insurance.

During cross-examination, Constable Stroud testified that a check of the vehicle identification number ("VIN") for the Town Car showed that there "was no current registration on that vehicle" but that the car was last registered to a Jimmy Moore at a residence in Halls. He did not attempt to contact Mr. Moore. Constable Stroud acknowledged that the defendant never actually claimed an ownership interest in the car. Instead, the defendant said that he had fallen asleep while at a party at the river and that the vehicle was gone when he woke up.

During redirect-examination, Constable Stroud said that, regardless of who owned the vehicle, the defendant was the person he had seen driving the Town Car in the early morning hours of August 12, 2017.

Dora Kelly, the defendant's mother, testified that the defendant was living with her in August 2017, when the police came to her house early in the morning looking for the defendant. The police left when she told them that the defendant was not home. She said that, at that time, she owned a Nissan Frontier that had been her husband's but that "it was in the shop." She recalled having seen a white Lincoln Town Car parked in front of her house but denied having seen the defendant drive the vehicle. She could not identify the car that had been abandoned in the cornfield as the same one she had seen

parked in front of her house. Ms. Kelly acknowledged that the defendant smoked cigarettes and said that he smoked "[e]ither Marlboro or the cheapest you can buy most of the time." She testified that she thought the defendant drank Budweiser brand beer.

Ms. Kelly testified that the defendant returned home sometime after the police left and that she "told him they were looking for him. He went straight to the phone and turned himself in." She recalled that the defendant looked "[l]ike somebody who's been out all night or been to a girlfriend's or friend's house." Ms. Kelly could not specifically recall what the defendant was wearing that morning but said that he often wore denim shorts. She agreed that the defendant often wore hats and even collected them, but she said that she had never seen the hat collected by the police from the cornfield. Ms. Kelly could not identify the shoes or sock taken from the laundry room in her home as belonging to the defendant.

Ms. Kelly acknowledged that the defendant was "not supposed to be driving" in August 2017 and that he had "no insurance" at that time. She said that she did not permit the defendant to drive any of her vehicles.

During cross-examination, Ms. Kelly testified that she did not see any cornstalks or other debris on the defendant's clothing that morning but that he was wet because it had rained.

Tipton County Sheriff's Deputy Jarred Holloway testified that he assisted Constable Stroud on August 12, 2017. He recalled that he was on patrol on Quito-Drummonds Road when he saw Constable Stroud in pursuit of the white Town Car. He said that he "just turned around, joined in the pursuit" and that he "[b]egan calling out the radio traffic over the radio so Constable Stroud can just concentrate on driving and pursuing the vehicle." Deputy Holloway participated in the chase until it ended in the cornfield. He assisted the investigation by taking photographs. Later that morning, "around daylight," he went to Ms. Kelly's residence with Constable Stroud. When Deputy Holloway arrived at the residence, the defendant was there, but the deputy could not recall whether the defendant had been taken into custody at that time. He recalled that Constable Stroud identified the defendant as the person who had been driving the Town Car during the chase.

Deputy Holloway testified that he asked for and received Ms. Kelly's permission to search the residence. He collected the "clothing items that were found in the laundry room in the residence." He said that the clothing was "very dirty" and "wet" with "traces of corn material."

-4-

Following Deputy Holloway's testimony, the defendant elected to testify after a full *Momon* colloquy.

The defendant testified that the clothing collected by the police belonged to him but said that the "dirt and grease" on the clothing came from his work. He said that, after work, he went home and took a shower, placing his dirty work clothes into the hamper in the laundry room, as was his custom. He then "went to a bar at Morrie's on Easley in Millington," where he "[r]an into a girl" named "Judy" that he knew. The two "[d]ecided to go have some beers at other places." The defendant testified that Judy "said she had a car with no tags," so he "took the tags off my mother's TV stand and put the tags on that car." The two then "rode around and did some bar hopping here and there." Later, they "[w]ent to some people's house," where he "dozed off" "out back." The defendant said that "when I got up, the people that I was with were gone." He claimed that he "knocked on the owner's door and he g[a]ve me a ride to the gas station at Wilkinsville," from which location the defendant began walking. He was "picked up again and was dropped off at Simmons Road, and then I walked the rest of the way home. And that was the extent of the night."

The defendant testified that he arrived home at approximately 6:00 a.m., at which point Ms. Kelly told him that officers with the Millington Police Department had been to the residence looking for him. He said that he telephoned the police station and that "[o]fficers showed up, put me in handcuffs, stuck me in a car."

The defendant agreed that his driver's license had been revoked but said that he did not, at any point, drive the Town Car on August 12, 2017. He also denied having driven the car with an open container of beer. The defendant acknowledged that the cellular telephone taken from the Town Car belonged to him but said that the last time he saw the telephone was when he "plugged it up to the charger and laid it on the front passenger seat in the car." He maintained that the cigarettes recovered from the car were not the kind that he smoked but acknowledged that the hat found on the ground outside belonged to him. He said that the last time he saw the hat, it was next to his "phone on the front seat." The defendant claimed that, while being transported by Constable Stroud to the jail, he asked the constable for a cigarette and that Constable Stroud "told me if I confessed to driving the car, he'd let me smoke."

During cross-examination, the defendant insisted that he smoked Marlboro Lights and never anything else. He said that none of the hats found inside the car belonged to him. The defendant testified that he took the tags to put on the Town Car "[b]ecause I was interested in the girl." The defendant said that the shoes taken from Ms. Kelly's residence did not belong to him and that, in fact, he did not "wear low cut shoes" but only wore "high tops" because he had "bad ankles."

Based upon this evidence, the jury convicted the defendant of evading arrest, driving on a revoked license, violating the open container law, and violating the financial responsibility law. As will be discussed more fully below, the jury did not render a verdict on the charge of reckless driving.

## I. Sufficiency

The defendant challenges the sufficiency of the convicting evidence, arguing that the State failed to establish his identity as the driver of the white Town Car and that, with regard to the conviction of violating the open container law, that the empty beer bottles inside the car did not contain beer that was capable of immediately being consumed. The State asserts that the evidence was sufficient.

Sufficient evidence exists to support a conviction if, after considering the evidence—both direct and circumstantial—in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). This court will neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Dorantes*, 331 S.W.3d at 379. The verdict of the jury resolves any questions concerning the credibility of the witnesses, the weight and value of the evidence, and the factual issues raised by the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

With the exception of the offense of violating the open container law, the defendant does not challenge the evidence supporting the elements of the offenses, but instead argues that the State failed to establish his identity as the perpetrator. "The identity of the perpetrator is an essential element of any crime." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citing *State v. Thompson*, 519 S.W.2d 789, 793 (Tenn. 1975)). Whether the State has established the defendant as the perpetrator of the charged offenses beyond a reasonable doubt is "a question of fact for the jury upon its consideration of all competent proof." *State v. Bell*, 512 S.W.3d 167, 198 (Tenn. 2015) (citing *State v. Thomas*, 158 S.W.3d 361 app. at 388 (Tenn. 2005)).

Here, Constable Stroud testified that when he learned that the tags affixed to the Town Car belonged to a different vehicle, he attempted to effectuate a traffic stop. Instead of stopping, the driver of the Town Car fled. Constable Stroud gave chase, closely following the Town Car as it reached speeds of 60 miles per hour. He said that he was able

to clearly see the driver, whom he described as a white male, throughout the chase. After the driver drove the car into a cornfield and abandoned it, officers found the defendant's cellular telephone inside the car and his hat lying in the field next to the car. A search of Ms. Kelly's residence, where the defendant lived at the time, revealed the defendant's clothing and shoes that were wet, dirty, and soiled with the detritus of the cornfield. Although the defendant insisted that he had not been driving the Town Car that evening and that he only affixed the tags that belonged to Ms. Kelly to the Town Car to get into the good graces of "a girl," the jury, as the judge of the facts, was free to reject the defendant's testimony and accept that offered by Constable Stroud. In our view, this evidence was sufficient to establish the defendant's identity as the perpetrator.

In his brief, the defendant, citing, Code section 55-10-416, argues that the evidence was insufficient to support his conviction of violating the open container law because the State presented no proof that the beers found inside the Town Car "had recently been consumed." That statute, however, provides that "'[o]pen container' means any container containing alcoholic beverages or beer, the contents of which are immediately capable of being consumed *or the seal of which has been broken*." T.C.A. § 55-10-416(a)(1)(A). Additionally, the statute provides that "[a]n open container is in the possession of the driver when it is not in the possession of any passenger and is not located in a closed glove compartment, trunk or other nonpassenger area of the vehicle." *Id.* § 55-10-416(a)(1)(B). Constable Stroud identified the defendant as the driver and only occupant of the Town Car immediately before the car was driven into the cornfield and abandoned. Officers found two open, empty or partially empty beer bottles inside the car. From this evidence, a rational jury could have found that the defendant violated the open container law.

## II. Clerical Error

For reasons not explained in the record, the jury did not return a verdict on the charge of reckless driving. Indeed, it is unclear from the record on appeal that that charge was ever actually submitted to the jury. No verdict form for this charge is included in the record, no verdict for this offense is memorialized in the trial court order approving the verdicts, and the jury foreman did not mention the offense when rendering the verdict on the record. Despite this, a judgment form for this count indicates a jury verdict of guilty and a merger of this offense into the defendant's conviction of felony evading arrest. Because it does not appear from the record that the jury actually rendered a guilty verdict for this offense, we remand the case for the entry of a corrected judgment form reflecting the correct disposition of this charge if appropriate.

*Conclusion*

Based upon the foregoing analysis, we affirm the judgments of the trial court but remand the case to the trial court for the entry of a corrected judgment form for Count 2.

_____
JAMES CURWOOD WITT, JR., JUDGE